IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| WILL CATOE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 3:23-CV-1496-LCB |
| ) | |
| CITY OF SHEFFIELD, ALABAMA, ) | |
| RICKY TERRY, ) | |
| SCOTT WALLACE, ) | |
| FRED GRAYBRAYAN, ) | |
| RAY TERRY, ) | |
| RANDY BUTLER, ) | |
| CHRIS TATE, ) | |
| MASON HERSTON, ) | |
| JOE HAYNES, ) | |
| KAREN KING, ) | |
| NADIA LOCKETT, ) | |
| ELBERT POPE, ) | |
| ANTHONY STRICKLAND, ) | |
| ) | |
| Defendants. ) | |

**THIRD AMENDED COMPLAINT**

Plaintiff complains of defendants, stating as follows:

**Parties**

1. Will Catoe is of legal age and a U.S. citizen. He resides in Jefferson County, Alabama.

2. The City of Sheffield is an Alabama municipality.

3. Defendant Ricky Terry was employed by the City of Sheffield as the

police chief at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

4. Defendant Scott Wallace was employed by the City of Sheffield as a police captain (and the effective assistant police chief) at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

5. Fred Graybrayan was employed by the City of Sheffield as the jail administrator at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

6. Defendant Ray Terry was employed by the City of Sheffield as a police lieutenant at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama. He also served as a county mental health officer.

7. Defendant Randy Butler was employed by the City of Sheffield as a police captain at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

8. Defendant Chris Tate was employed by the City of Sheffield as a police lieutenant at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

9. Defendant Mason Herston was employed by the City of Sheffield as a police sergeant at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

10. Defendant Joe Haynes was employed by the City of Sheffield as a police sergeant at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

11. Defendant Karen King was employed by the City of Sheffield as a jailer at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

12. Defendant Nadia Lockett was employed by the City of Sheffield as a jailer at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

13. Defendant Elbert Pope was employed by the City of Sheffield as a jailer at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

14. Defendant Anthony Strickland was employed by the City of Sheffield as a jailer at all times relevant to the allegations in this complaint and is a resident and citizen of the state of Alabama.

15. All individual defendants are sued in their individual capacities only.

## Facts

16. On or about March 8-9, 2022, plaintiff, Will Catoe, was in an extreme physical and mental health crisis.

17. Catoe is an alcoholic.

18. Catoe was abusing alcohol and drugs.

19. On March 8, 2022, Catoe was admitted to Helen Keller Hospital in Sheffield, Alabama.

20. Catoe disclosed his alcohol and drug history to medical personnel and informed them he believed he was experiencing rhabdomyolysis, a life-threatening condition.

21. Catoe also disclosed a history of rhabdomyolysis.

22. Catoe was diagnosed with rhabdomyolysis.

23. Catoe was treated with IV fluids.

24. Catoe was informed he needed in-patient treatment for his drug and alcohol issues.

25. On March 9, 2022, in the early afternoon, Catoe chose to leave the hospital against medical advice.

26. When Catoe left the hospital, he was still suffering from rhabdomyolysis.

27. Catoe was also paranoid.

28. Hospital personnel called police because they were concerned that Catoe was a danger to himself.

29. Sheffield police officers responded.

30. Catoe was arrested and placed in the Sheffield City Jail.

31. Catoe did not receive a judicial determination of probable cause.

32. During the arrest, Catoe was tased.

33. When Catoe was initially placed in a jail cell, he was combative and fought with officers.

34. After Catoe was placed in the jail cell, he fought to get out of the cuffs.

36. The tasing and the physical conflict with officers during the arrest and at the jail aggravated Catoe's rhabdomyolysis.

37. Catoe's efforts to get out of the cuffs further aggravated Catoe's rhabdomyolysis.

38. While Catoe was incarcerated, Sheffield jail personnel initially kept Catoe cuffed behind his back.

39. As a result of being handcuffed behind his back and due to his combativeness, Catoe suffered multiple lacerations and abrasions to his wrists and arms, feet, legs, and other parts of his body.

40. The most serious injuries were deep lacerations to Catoe's right hand and wrist, which occurred on March 9, 2022, while Catoe was being placed in his jail cell or shortly thereafter.

41. The lacerations were open wounds that obviously required medical attention to prevent infection.

42. On March 9, 2022, in the afternoon, shortly after Catoe sustained these wounds, Catoe became docile, though he was still out of touch with reality.

43. Because Catoe was docile, at some point the cuffs were removed.

44. From the afternoon on March 9 to the morning of March 11, 2022, Catoe deteriorated.

45. Catoe was disconnected from reality.

46. Catoe did not eat.

47. Catoe did not drink.

48. Catoe's lips became dry and cracked.

49. Catoe lay in his cell, obviously weak and sick.

50. Catoe's wounds started showing obvious signs of infection, including discoloration and swelling, particularly his right hand and wrist.

51. Because of Catoe's extreme thirst (due to rhabdomyolysis-induced kidney failure) and the lack of running water in the cell, Catoe began drinking from the toilet.

52. By the morning of Friday, March 11, 2022, at the latest, it was obvious to anyone observing or hearing about Catoe's condition that Catoe needed immediate treatment in a hospital due to the obviously-infected wounds on his right hand and wrist, his sick and weakened condition, and his mental state.

53. Catoe's condition as described above in ¶¶45-51 was observed by and otherwise known to jail administrator Graybrayan (day shift on March 11), jailer Pope (day shift on March 11), jailer Lockett (overnight shift ending on March 11 and 12),

jailer Strickland (day shift on March 12 and 13), and jailer King (overnight shift ending on March 13).

54. In the morning on March 11, Graybrayan communicated with defendant Ray Terry (a county mental health officer), and police administration and supervision, including defendants Ricky Terry, Wallace, and Butler regarding Catoe's condition as described above in ¶¶45-51 and need to be taken to the hospital for treatment.

55. Catoe's condition as described above in ¶¶45-51 was also observed by and communicated to shift supervisors Haynes (overnight shift ending on March 12), Tate, (day shift on March 12 and 13), and Herston (overnight shift ending on March 13).

56. Nevertheless, each of these defendants failed and refused to get Catoe the medical care he desperately needed.

57. Defendants did nothing until Catoe became non-responsive on the afternoon of March 13.

58. Defendants, in order to avoid City liability for Catoe's medical bills, refused to send Catoe to the hospital.

59. On March 12, 2022, defendant Ray Terry, with the knowledge and approval of defendants Graybrayan, Ricky Terry, Wallace, and Butler, obtained a medical bond so Catoe could be taken to the hospital without the City having any liability for any medical bills.

7

60. Even after Ray Terry obtained the medical bond, defendants allowed Catoe to further deteriorate for another ~24 hours until Catoe was non-responsive.

61. The use of medical bonds to avoid liability for medical bills is a routine practice in the City.

62. In the early afternoon on March 13, 2022, a Sheffield officer called an ambulance to take Catoe to the hospital.

63. Catoe spent roughly three weeks in Helen Keller Hospital, including a week in the ICU, and was treated for multiple conditions, including rhabdomyolysis, renal failure, sepsis, and cellulitis (a deep infection of the skin) of all four of his extremities, though most significantly his right hand and wrist.

64. After being discharged from Helen Keller, Catoe spent another week at Grandview Hospital in Birmingham due to sepsis, an abscess on his right wrist, continued kidney issues, and staff infections.

65. Catoe required multiple surgeries and a lengthy period of rehabilitation to address the abscess.

66. Catoe was off work on disability for 5 months.

67. Under the City's operating procedures manual, defendant Graybrayan, under the supervision of Ricky Terry, is responsible for "all jail operations and functions," including "[t]he necessary medical and health care" of inmates.

68. Graybrayan and Ricky Terry are final policymakers for the City

regarding medical care for City inmates.

## Count I - 42 U.S.C. § 1983 -
## Deliberate Indifference to Serious Medical Needs

69. As described above, between March 9 and 13, 2022, the individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983 and defendants Graybrayan and Ricky Terry as final policymakers for the City, were deliberately indifferent to plaintiff's serious medical needs.

70. The individual defendants acted with malice or reckless indifference to plaintiff's constitutional rights.

71. Because Graybrayan and Ricky Terry acted as final policymakers for the City, the City is liable.

72. Moreover, the City has a policy and custom of refusing to provide necessary medical treatment for inmates. Instead, to avoid liability for medical bills, the City allows conditions to deteriorate and then releases inmates on medical bonds.

73. As a result of the conduct of the individual defendants and the City, plaintiff has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical expenses.

## Other Matters

74. All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

75. As relief, plaintiff seeks the following:

   a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   b. That plaintiff be awarded against the individual defendant only such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   a. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

   b. That plaintiff be awarded the costs of this action, plaintiff's reasonable attorney's fees, and plaintiff's reasonable expert witness fees;

   e. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated: March 6, 2024.**

        Respectfully submitted,

        /s Henry F. (Hank) Sherrod III
        Henry F. (Hank) Sherrod III
        No. ASB-1200-D63H
        HENRY F. SHERROD III, P.C.
        119 South Court Street
        Florence, Alabama 35630
        Phone: 256-764-4141
        Fax: 877-684-0802
        Email: hank@alcivilrights.com

        Attorney for Plaintiff

## Jury Demand

Plaintiff requests a trial by jury.

        s/ Henry F. (Hank) Sherrod III